# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PETER CROOKER, | : | |
| | : | CIVIL ACTION NO.:05-10301RCL |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NATIONAL RAILROAD PASSENGER | : | |
| CORPORATION, a/k/a AMTRAK, | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFF'S PRETRIAL MEMORANDUM

Plaintiff Peter Crooker, by and through his undersigned counsel and pursuant to the Court's Order for Final Pretrial Conference, submits this Pretrial Memorandum in connection with the above-captioned matter.

## I.    TRIAL COUNSEL

William L. Myers, Jr., Esquire
Steven M. Lafferty, Esquire
Myers Lafferty Law Offices, P.C.
Suite 800
1515 Market Street
Philadelphia, PA 19102
(215) 988-1229

## II.    SUMMARY OF THE EVIDENCE

### A.    Liability:  Small Engine Doorway; Lack of Padding; Lack of Warning

On January 29, 2003, Mr. Crooker was employed by Amtrak as an engineer and was working on Locomotive Engine 837 ("Engine 837"), a model P-42 locomotive.   As he went to exit the engine, his head struck the top of the short, narrow, unpadded and unmarked doorway with enough force to cause Mr. Crooker to take several steps backward, resulting in cervical compression injuries.  (See Amtrak Employee Injury/Illness Report and Amtrak Personal Statement, Exhibit A hereto).

The evidence will show: (a) That the doorway to Engine 837 was poorly designed in that it was too low and too thin to reasonably accommodate Amtrak engineers, particularly tall and heavy engineers like Mr. Crooker, who are not uncommon on Amtrak; (b) That Amtrak unreasonably failed to pad the top of the doorway or even to have safety markings placed on the top; and (c) That the poor design of the doorway and the failure to pad and mark it were particularly unreasonable given that engineers like Mr. Crooker have to focus their attention on many things other than the top of the door when they exit the engine.

Model P-42 engines have a very low exit door, measuring only 65" (5'5").  (See Exhibits 1A, B and C hereto) [1].  This makes the door fully ten inches lower than Mr. Crooker's height of 75" (6'3") [2].  The engine door is also only twenty-two inches (22") wide, providing little room for Mr. Crooker, who weighed 260 pounds [3].  This narrow space is exacerbated by

---

[1]  All of the photographic exhibits are attached hereto under the "Exhibit B" tab.

[2] The low external door height of Engine 837 is in marked contrast to the 71-73" height of some Amtrak engines (See Exhibit 3A, 4A, B).

the design of the door, which causes the door to be able to open only to 90 degrees, instead of 180 degrees. All in all, the height, width and design of the door make it very difficult for an engineer like Mr. Crooker to safely exit the engine, particularly in that he had to carry his bulky "road bag."

In addition to being only 5'5" in height, the exit door on Engine 837 lacked any over-head safety padding. This was in marked contrast to Amtrak's practice of having such pad-ding on the doorways and low-hanging internal parts of other Amtrak engines. (See Exhibits 5B, C). Safety padding provides cushioning in case an engineer strikes his head. Addition-ally, safety padding can provide a strong visual cue of the location of the top of the doorway when colored in the traditional bright yellow.[4] Amtrak knows how to do this, as evidenced by its markings inside the locomotives, on low stairways (See Exhibits 1D, E), as well as on the external doors of certain locomotives (See Exhibits 5B, C). Amtrak also pads low-hanging appurtenances inside the locomotives. (See Exhibits 1I, K, L).

The low and narrow doorway and lack of padding and marking were particularly un-reasonable given that Amtrak engineers have to have their minds on many things beside the top of the doorway as they exit the engines. Initially, an Amtrak engineer has to focus on his footing, because there is a raised lip at the bottom of the door, and because the engineer is about to climb out over the side of the railcar. As an engineer exits the door, he has to be turning because he must descend facing the locomotive. The engineer also has to be careful not to swing his road bag against the narrow doorway.

---

[3] Mr. Crooker was not unusually large among Amtrak engineers. Mr. Crooker's supervisor, Road Foreman of Engines Dennis Drumheller testified to this, stating that some Amtrak engineers weigh over three hundred pounds.

[4] Sadly, Amtrak has an unfortunate practice of painting over the safety padding, causing it to harden and loose its value as a visual warning cue. (See Exhibits 5A, 5D).

Despite his knowledge that Amtrak provides safety padding on the doorways of some of its engines, Mr. Crooker's supervisor, Road Foreman of Engines Denis Drumheller, admitted in his deposition that he never requested such padding to be applied over the exit doors of the P-42 engines.  Nor did Mr. Drumheller ever even request that the tops of the doors be marked with yellow.  He also did not bother to inspect the engines his subordinates worked on to see which ones did and did not have the safety padding.  This, despite the fact that Mr. Drumheller admitted he was responsible for the safety of the men working under him, including Mr. Crooker.  More specifically, Mr. Drumheller admitted in deposition that it would have been part of his job to remediate a dangerous condition on a locomotive, including the absence of a type of safety equipment.

In respect of contributory negligence, there is no evidence from which a jury reasonably could find that Mr. Crooker was negligent.  He exited the engine the way he was taught, with his road bag over his shoulder.  Consistently, Amtrak did not charge Mr. Crooker with any rules violations or otherwise find him to blame for the accident.[5]

## B.   <u>Damages</u>

As a result of the accident, Mr. Crooker suffered cervical compression injuries, including C7-T1 disc herniation, C3-4 disc bulge, and C6-7 radiculopathy, and aggravation of pre-existing non-symptomatic degeneration.  These injuries manifested in neck pain, spasm and decreased range of motion, together with radiation into the upper extremities.

---

[5] Amtrak now seems to be claiming that Mr. Crooker was partly at fault because he should have handed his road bag out to another crew member on the platform.  Whether to carry the road bag, however, is a decision left up to each engineer's discretion.  And the simple fact is that there was no one for Mr. Crooker to hand his road bag to; his crew members (the conductor and assistant conductor) were elsewhere, helping passengers off the train and walking through the train to ensure it was empty, as was their duty.  Mr. Crooker also could not toss his bag down onto the platform, because it was overflowing with timetables, bulletins, flashlight and gloves, which would have spilled out.

### 1.     <u>Physical Injuries and Medical Treatment</u>

Following his accident, Mr. Crooker continued to work until February 10, during which time he began to experience symptoms, but the symptoms were not significant enough to worry him. On February 11, Mr. Crooker underwent pre-scheduled varicose vein surgery in his leg. While he was out after the vein stripping, he experienced neck pain and burning and numbness in his upper extremities. Mr. Crooker reported his symptoms to primary care physician John O'Leary, M.D. on February 14, 2003, and doctor O'Leary referred Mr. Crooker for an MRI. The MRI, taken at South County Hospital on February 20, 2003, showed, *inter alia*, a broad-based disc herniation at C7-T1, bulging at C3-4. (<u>See</u> Exhibit C hereto).

On March 3, 2003, Mr. Crooker began treating with orthopedist Randall L. Updegrove, M.D. of University Orthopedics. Dr. Updegrove summarizes the history Mr. Crooker gave him as follows:

> He indicated the abrupt onset of right-sided neck pain after striking the top of his head in a narrow doorway while exiting the train on 01/29/03. He had since noted progressive neck pain with radiation and numbness and tingling to the right second and third fingers.

(<u>See</u> Report of Randall Updegrove, Exhibit D hereto).

Dr. Updegrove initially diagnosed Mr. Crooker as suffering aggravation of cervical disc disease along with C6-7 radiculitis. He prescribed Medrol Dosepak and physical therapy, and saw Mr. Crooker in follow up on March 24, April 14, April 28, May 29, June 16, July 7, July 28, September 2, October 3, December 11, 2003; January 22, February 23, March 8, April 12, September 21, October 13, November 19, 2004; January 6, October 28, November 4, No-

vember 18, and December 20, 2005.  Throughout this time, Mr. Crooker exhibited paresthesia in his right arm and into both hands; occasional radiating pain into the right arm and hand; and persistent neck pain.

For his continuing neck pain, Mr. Crooker was referred by Dr. Updegrove for possible epidural injections to Mark A. Palumbo, M.D., University Orthopedics, Providence, R.I. Dr. Palumbo prescribed the injections, which were administered on August 8, August 22, and September 5, 2003.  Additionally, Mr. Crooker saw Dr. Palumbo on August 19 and September 30, 2003.

Dr. Updegrove also referred Mr. Crooker for physical therapy at Physical Therapy Services of Rhode Island.  Mr. Crooker underwent (40) forty sessions of physical therapy, from March 5, 2005 to September 28, 2005, on the following dates:  March 5, 6, 10, 14, 17, 20, 26, 28; April 2, 4, 7, 9, 14, 16, 21, 23, 28, 30; May 5, 7, 14, 21, 28; June 2, 5, 9, 12, 16, 26; July 3, 8, 10, 18, 22, 24, 31; August 14; September 8.

## 2.    Economic Impact

Mr. Crooker reported his injury on February 26, 2003, after the MRI demonstrated that he had suffered significant cervical injuries.  Following that time, he was off work entirely for a period of time, returned to light duty, then full duty, then back to light duty, as follows:

| | |
|---|---|
| 02-26-03 to 08-24-03 (6.5 months) | Off work completely |
| 08-25-03 – 10-22-03 (2 months) | Light Duty |
| 10-23-03 – 01-22-04 (3 months) | Full Duty |
| 01-22-04 – 03-09-04 (1.5 months) | Off work after flare up |

Mr. Crooker was forty-five (45) at the time of his injury.  His earnings for the years leading up to the injury, including a 10-12% pre-tax 401(k) contribution, averaged $70,789 per year, as follows:  $72,369 (2000), $69,237 (2001), $71,356 (2002).  (See Exhibit E hereto). This is contrasted to his post-injury earnings as follows:

| Year | Earnings | Average Pre-Injury Earnings | Difference |
|------|----------|-----------------------------|------------|
| 2003 | $31,349 | $70,789 | $39,548 |
| 2004 | $53,206 | $70,789 | $17,781 |
| 2005 | $48,604 | $70,789 | $22,185 |
| 2006 | $62,272 | $70,789 | $ 8,517 |
| Total Lost Earnings: | | | $88,031 |

The reason Mr. Crooker continues to earn decreased wages through the present is that, as a result of his injuries, he works 40 hours a week on a yard-switching engine, as opposed to 50+ hours a week on an engine that traveled over the road.

### 3.    Non-Economic Injuries

As a result of his injuries, Mr. Crooker was unable to lift normally or to perform normal household activities, and was limited socially, until he received his second epidural injection in August of 2003.  Mr. Crooker and his wife adopted a daughter, Corina, on December 20, 2004, and his ability to rough-house with her has been limited as well.

## III.    STATEMENT OF APPLICABLE LEGAL PRINCIPLES

### A.    FELA - Obligation to Provide Safe and Suitable Locomotives, Tools and Equipment

Under the FELA, a railroad is obligated to furnish safe and suitable locomotives, tools and other equipment.  Chicago & N. W. Ry. Co. v. Rieger, 326 F.2d 329 (8th Cir. 1964),

*cert. denied*, 377 U.S. 917 (1964); <u>Rodriguez v. Delray Connecting Railroad</u>, 473 F.2d 819, 821 (6th Cir. 1973)(safe and suitable tools); <u>Kalanick v. Burlington Northern R. Co.</u>, 788 P.2d 901, 242 Mont. 45 (1990)(safe and suitable equipment); <u>St. Louis Southwestern Ry. Co. v. Greene</u>, 553 S.W.2d 880, 884 (Tex. 1977)(safe and suitable equipment).

### B.     FELA- Duty to Promulgate Safe Work Methods & Train Employees

Under the FELA, railroads are required to institute safe work methods and rules, and are required to train their employees how to perform their jobs safely.  <u>Kimbler v. Pittsburgh & Lake Erie Rail Co.</u>, 331 F.2d 383, 386 (3d Cir. 1964), <u>citing</u>, <u>Oliver v. Chesapeake & Ohio Ry. Co.</u>, 151 N.E.2d 371, 373 (Ohio. Ct. App. 1951); <u>Chesapeake & Ohio Ry. Co. v. Richard-son</u>, 116 F.2d 860, 863 (6th Cir. 1941), <u>cert</u>. <u>Denied</u>, 313 U.S. 574.  <u>See</u> <u>also</u> <u>Williams v. Am-trak</u>, 1997 U.S. Dist. LEXIS 18726 (N.D. Ill. 1997); <u>Zareki v. Amtrak</u>, 914 F. Supp. 1566 (N.D. Ill. 1996); <u>Aparicio v. Norfolk & Western</u>, 874 F. Supp. 154 (N.D. Ohio 1994), <u>rev'd on</u> <u>other</u> <u>grounds</u>, 84 F.3d 803 (1996); <u>Tremblay v. Rudrick & Sons, Inc.</u>, 13 A.2d 153, 154-55 (N.H. 1940).

### C.     FELA- Duty to Provide Adequate Manpower

Under the FELA, a railroad's duty to provide its employees with a safe place to work includes the obligation to provide adequate manpower.  <u>Blair v. Baltimore & Ohio r. Co.</u>, 323 U.S. 600 (1945)(sufficient manpower);  <u>Kalanick v. Burlington Northern R. Co.</u>, 788 P.2d 901, 242 Mont. 45 (1990)(safe and suitable equipment and manpower).

### D.    LIA – Absolute Liability

Under the Locomotive Inspection Act (LIA), a railroad is allowed to operate only those locomotives that do not pose unnecessary danger of personal injury.  The railroads' duty under this law is absolute; a plaintiff does not have to establish negligence.  49 U.S.C. §20701.  Lilly v. Grand Trunk Western Railroad, 317 U.S. 481, 485 (1942), quoting, inter alia, Southern Ry. Co. v. Lunsford, 297 U.S. 398, 401 (1936); See Lilly v. Grand Trunk Western Railroad, 317 U.S. 481, 485 (1942)(negligence is not the basis of liability under the BIA); McCarthy v. Pennsylvania Railroad Co., 156 F.2d 877, 880 (7th Cir.)(no notice to railroad of defect is necessary to render railroad liable under BIA), cert. denied, 329 U.S. 812 (1946); Trout v. Pennsylvania Railroad Co., 300 F.2d 826, 829 (3d Cir. 1962)(district court must make clear to jury that neither evidence of negligence nor due care should be considered)(safety appliance act).

### E.    FELA & LIA - Reduced Standard of Causation

Under the FELA and LIA, plaintiffs enjoy a significantly reduced causation standard. Thus, under the FELA and LIA a railroad will be liable to the employee wherever the railroad's negligence played any part, no matter how small, in bringing about or causing the employee injuries.  See Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions, Section 94.13 (4th Ed. 1987); Camplese v. Consolidated Rail Corporation, 594 F. Supp. 44, 47 (M.D. Pa. 1984)(FELA inquiry is limited to question whether employer negligence played any part, however small in bringing about employee injury), citing Rogers v. Missouri Pacific R. Co., 352 U.S. 500 (1957).

**F.    FELA & LIA -Assumption of the Risk is no Defense**

Amtrak may want to argue that Mr. Frederick was negligent in deciding to exit the lo-comotive knowing the dangerous condition of the doorway.  This argument, however, is an Assumption of the Risk argument, and may not be used in an FELA case or LIA case, for the simple reason that Assumption of the Risk has been completely abrogated in FELA and LIA cases.  See 45 U.S.C. Section 54; Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54, 58 1943)(assumption of risk doctrine "obliterated" by 1939 amendment); Taylor v. Burlington Northern R. Co., 787 F.2d 1309, 1316-17 (9th Cir. 1986)(employee's act of simply reporting to work did not constitute contributory negligence, but rather assumption of risk); Adams v. Seaboard Coast Line R. Co., 295 So.2d 1,5 (Fla. 1974)(mere employee knowledge of danger created by railroad negligence does not preclude recovery); Erickson v. Southern Pacific Co., 39 Cal.2d 374, 246 P.2d 642, 646 (Cal. 1952), cert. denied, 344 U.S. 897 (1952)(Plaintiff's knowledge of unsafe nature of premises does not relieve defendant of liability); Schirra v. Delaware, L. & W. R. Co., 103 F. Supp. 812, 819 (M.D. Pa. 1952)(Defendant cannot argue that Plaintiff assumed risk by returning to job).  See Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, Section 94.16 (4th Ed. 1987).  Consistently, Mr. Frederick may not be found at fault for an accident merely because he worked at a dangerous job or in a dangerous place or under unsafe conditions or because he knew of the dangers of standing on the unsteady ladders.

**G.    LIA – Contributory Negligence is No Defense**

Under the Locomotive Inspection Act, contributory negligence, like assumption of risk, is no defense.  Lilly v. Grand Trunk Western Railroad, 317 U.S. 481 (1942)(defenses of

contributory negligence and assumption of risk are not available in Boiler Inspection Act case); McCarthy v. Pennsylvania Railroad Co., 156 F.2d 877, 881 (7th Cir.), cert. denied, 329 U.S. 812 (1946)(even if plaintiff's use of locomotive after he knew of the defect was the sole proximate cause of accident, this is no defense in Boiler Inspection Act case because plaintiff's acts are either acts of contributory negligence or assumption of risk). See generally 45 U.S.C. §§ 53, 54.

## IV.    STIPULATION OF UNCONTESTED FACTS

Plaintiff proposes the parties stipulate to the following:

1.    The locomotive engine on which Mr. Crooker claims to have been injured was Amtrak Locomotive 837, a model P-42 engine.

2.    Amtrak owned the locomotive at the time of the accident and since at least February 2002, as shown on the maintenance records.

3.    On January 29, 2003, at the time Mr. Crooker claims he was injured, he was employed by Amtrak as an engineer and was employed in interstate commerce.

4.    At all times material hereto, including January 29, 2003, Amtrak is and was a common carrier railroad engaged in the business of transporting paying passengers interstate.

## V.    CONTESTED ISSUES OF FACT

The parties disagree on the injuries and damages sustained by Mr. Crooker as a result of the accident, Amtrak's liability and contributory negligence.

## VI.     JURISDICTIONAL QUESTIONS

Plaintiff is aware of no jurisdictional questions.  This Court has jurisdiction over this matter pursuant to 45 U.S.C. §56, which vests the state and federal courts with concurrent jurisdiction over FELA claims.

## VII.     PENDING MOTIONS

There are no pending motions at this time.

## VIII.     ISSUES OF LAW

Plaintiff is not aware of any significant contested issues of law, and will inform the Court should any such issues arise before or during the course of trial.

## IX.     AMENDMENTS TO PLEADINGS

There are no proposed amendments at this time.  Plaintiff will inform the Court of any need to amend the pleadings that arise before or during the course of trial.

## X.     ADDITIONAL MATTERS

Plaintiff presently has no additional matters to raise with the Court.  Should any such matters arise before trial, Plaintiff will so inform the Court.

## XI.     PROBABLE LENGTH OF TRIAL

Undersigned counsel for Plaintiff anticipates it will take five days to try this case.

## XII.  <u>WITNESSES</u>

1.      Peter Crooker
         131 Ten Rod Road
         North Kingston, RI 02852
         (Fact Witness as to Liability and Damages)

2.      Ann Marie Crooker
         131 Ten Rod Road
         North Kingston, RI 02852
         (Fact Witness as to Damages)

3.      Dennis Drumheller
         118 Yew Street
         Douglas, Massachusetts 01516
         (Road Foreman of Engines)
         (Fact Witness as to Liability and Damages)
         (Direct As On Cross-Examination)

4.      Amtrak Maintenance Supervisor
         c/o Amtrak
         (Fact Witness as to Liability; Maintenance of Locomotive)
         (Direct As On Cross-Examination)

5.      Dean Davidson
         39 Pinecrest Drive
         Pawtucket, RI
         (Conductor)
         (Fact Witness as to Liability and Damages)

6.      John Newman
         30 Spruce Street
         Foxboro, MA
         (Assistant Conductor)
         (Fact Witness as to Liability and Damages)

7.      Randall L. Updegrove, M.D.
         University Orthopedics, Inc.
         1351 South County Trail, Suite 115
         East Greenwich, RI 02818
         (401) 884-1177
         (Fact and Expert Witness as to Damages)
         (Treating Physician and Medical Expert)
         (By Videotaped Deposition)

8.    Mark A. Palumbo, M.D.
      University Orthopedics, Inc.
      Medical Office Center
      2 Dudley Street – Suite 200
      Providence, RI 02905
      (401)457-1595
      (Fact and Expert Witness as to Damages)
      (Treating Physician and Medical Expert)
      (By Videotaped Deposition)

9.    John O'Leary, D.O. – Medical Expert
      24 Salt Pond Road
      H-1
      Wakefield, RI 02879
      (Fact and Expert Witness as to Damages)
      (Treating Physician and Medical Expert)
      (By Videotaped Deposition)

10.   Any and All Witnesses Identified by Amtrak

## XIII.  <u>EXHIBITS</u>

Plaintiff's Exhibit List is attached hereto as an Appendix at Exhibit F.

## XIV.  <u>PROPOSED POINTS FOR CHARGE</u>

Plaintiff's Proposed Points for Charge are attached hereto as an Appendix marked as Exhibit G.

## XV.  <u>PROPOSED VOIRE DIRE</u>

Plaintiff's Proposed Voire Dire questions are attached hereto as an Appendix marked as Exhibit H.

## XVI.  <u>PROPOSED SPECIAL JURY INTERROGATORIES</u>

Plaintiff's Proposed Special Jury Interrogatories are attached hereto as an Appendix marked as Exhibit I.

**MYERS LAFFERTY LAW OFFICES, P.C.**


**BY:**  *William L. Myers, Jr.*

William L. Myers, Esquire
Suite 810
1515 Market Street
Philadelphia, PA 19102
(215) 988-1229

## CERTIFICATE OF SERVICE

I, WILLIAM L. MYERS, JR., hereby certify that I have today served a true and cor-

rect copy of the foregoing Plaintiff's Pretrial Memorandum upon the below-listed counsel for

defendant by first-class mail, postage prepaid, and by notice through electronic filing:

Thomas V. DiGangi, Esquire
Law Offices of John Bonistalli
One Financial Center – 28th Floor
Boston, MA 02111

*William L. Myers, Jr.*

William L. Myers, Jr., Esquire

December 5, 2006

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

**CASE NAME**:         Peter Crooker v. National Railroad Passenger Corporation

**CASE NO.:**          05-10301 RCL

**PRESIDING JUDGE**:   Honorable Reginald C. Lindsay

# PLAINTIFF'S EXHIBIT LIST

| EXHIBIT NUMBER | ----------DESCRIPTION OF EXHIBIT--------- | ADMITTED / DATE | EXCLUDED / DATE |
|---|---|---|---|
| 1A &B | Photographs of Amtrak Engine | | |
| 1C&D | Photographs of Amtrak Engine | | |
| 1E&F | Photographs of Amtrak Engine | | |
| 1G&H | Photographs of Amtrak Engine | | |
| 1I & J | Photographs of Amtrak Engine | | |
| 1K&L | Photographs of Amtrak Engine | | |
| 2 | Photograph of Engine 837 | | |
| 3A & B | Photographs of Amtrak Engine | | |
| 4A&B | Photographs of Amtrak Engine | | |
| 4C | Photograph of Amtrak Engine | | |
| 5A | Photograph of Amtrak Engine | | |
| 5B, C | Photographs of Amtrak Engine | | |
| 5D&E | Photographs of Amtrak Engine | | |
| 5F | Photograph of Amtrak Engine | | |
| 6 | Plaintiff's Road Bag | | |
| 7 | Employee Injury/Illness Report (2/26/03) | | |
| 8 | Amtrak Personal Statement (2/26/03) | | |
| 9 | Injured Employees 10 Day Report | | |
| 10 | Plaintiff's Amtrak Personal, Medical Files<br>A. Personal Action Request Form (03-04-03)<br>B. New Hire Physical Exam (04-09-96)<br>C. Periodic Exam Report (07-22-97)<br>D. Periodic Exam Report (06-05-02) | | |
| 11 | Amtrak Safety Rule Book (AMT-5) | | |
| 12 | NORAC Operating Rules (8th Edition) | | |
| 13 | Timetable | | |
| 14 | Plaintiff's Medical Binder<br>A.  John O'Leary, D.O.<br>B.  Randall L. Updegrove, M.D.<br>C.  Physical Therapy Associates of R.I.<br>D.  Mark A. Palumbo, M.D.<br>E.  Greenwhich Medical Center<br>F.  South County Hospital<br>G. MRI Report (02-20-03)<br>H. Report of Vincent Yakavonis, M.D. | | |

| EXHIBIT NUMBER | | ADMITTED / DATE | EXCLUDED / DATE |
|---|---|---|---|
| 15 | Curriculum Vitaes<br>A.  Randall L. Updegrove, M.D.<br>B.  John O'Leary, D.O.<br>C. Mark A. Palumbo, M.D. | | |
| 16 | Medical Drawings | | |
| 17 | Plaintiff's W-2 Statements 2000-2006 | | |
| 18 | Medical Treatment Chart | | |
| 19 | Wage Loss Chart | | |
| 20 | Maintenance History for Engine 837 | | |
| 21 | Letter from Crooker (02-23-04) | | |
| 22 | Defendant's Discovery Answers | | |
| 23 | Complaint and Defendant's Answer | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |
| 29 | | | |
| 30 | | | |
| 31 | | | |
| 32 | | | |
| 33 | | | |
| 34 | | | |
| 35 | | | |
| 36 | | | |
| 37 | | | |
| 38 | | | |
| 39 | | | |
| 40 | | | |
| 41 | | | |
| 42 | | | |
| 43 | | | |
| 44 | | | |
| 45 | | | |
| 46 | | | |
| 47 | | | |
| 48 | | | |
| 49 | | | |
| 50 | | | |
| 51 | | | |
| 52 | | | |
| 53 | | | |
| 54 | | | |
| 55 | | | |
| 56 | | | |
| 57 | | | |

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PETER CROOKER, | : | |
| | : | CIVIL ACTION NO.:05-10301RCL |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NATIONAL RAILROAD PASSENGER | : | |
| CORPORATION, a/k/a AMTRAK, | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFF'S PROPOSED POINTS FOR CHARGE

Plaintiff Peter Crooker, by his undersigned counsel, respectfully requests the

Court to read the ensuing Points for Charge to the jury.

**MYERS LAFFERTY LAW OFFICES, P.C.**

**BY:**   _William L. Myers, Jr._
          William L. Myers, Jr., Esquire

# 1.

## NATURE OF PLAINTIFF'S ACTION

This is an action brought by Plaintiff Peter Crooker against his employer, National Railroad Passenger Corporation, under the Federal Employers' Liability Act and the Locomotive Inspection Act.  In this action, Mr. Crooker alleges that he sustained serious cervical injuries while working for Amtrak.

Sinkler v. Missouri Pacific Railroad Co., 356 U.S. 326, reh. denied, 356 U.S. 978 (1958).

## 2.

### EXCLUSIVE REMEDY

This action today is the only remedy that Mr. Crooker has to recover damages against Amtrak for his injuries. He has no remedy under any State Workers' Compensation Act or under any law other than the Federal Employers' Liability Act and the Locomotive Inspection Act, and you must therefore determine his rights entirely under those Acta.

Seaboard Air Line v. Horton, 233 U.S. 492, 501 (1913), citing Second Employers' Liability Cases, 223 U.S. 1, 53-5 (1911).

**3.**

**ELEMENTS OF PLAINTIFF'S CLAIM-
FEDERAL EMPLOYERS' LIABILITY ACT**


Let me turn first to the Federal Employers' Liability Act.  To prove his case
against Amtrak under the Federal Employer's Liability Act, Mr. Crooker must prove
two things.  First, he must establish that Amtrak was negligent.  Second, he must es-
tablish that Amtrak's negligence caused or contributed to Mr. Crooker's sustaining
injury.


See Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, Section 94.12
(4th Ed. 1987).

**4.**

**BURDEN OF PROOF**


In deciding whether Mr. Crooker has proven both of the elements of his case, you must determine whether he has done so by a preponderance of the evidence. Mr. Crooker has the burden of proving by a preponderance of the evidence every essential element of his claim. By this, I mean he must prove something is more likely so than not so. In other words, a preponderance of the evidence in this case means such evidence as, when considered and compared with that opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proven is more likely true than not true. This rule does not, of course, require proof to an absolute certainty, as proof to an absolute certainty is seldom possible in any case. Nor does it require proof "beyond a reasonable doubt," as this is not a criminal case. Mr. Crooker only has to prove that something is more likely true than not true.


See Burch v. Reading Co., 240 F.2d 574, 579 (3d Cir. 1957), cert. denied, 353 U.S. 965 (1956); Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, Section 72.01 (4th Ed. 1987).

**5.**

**NEGLIGENCE**

Having told you that Mr. Crooker must prove that Amtrak was negligent, let me tell you what negligence is.  Negligence is the doing of something that a reasonably prudent person would not do, or the failure to do something that a reasonably prudent person would do, when prompted by considerations that ordinarily regulate the conduct of human affairs.  In other words, negligence is the failure to use ordinary care under the circumstances in the management of one's person or property.

See Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, Section 94.02 (4th Ed. 1987).

**6.**

**CAUSATION - FELA**


I have instructed you that Mr. Crooker must prove that Amtrak's negligence caused or contributed to Mr. Crooker sustaining injury.  Under the law, a railroad worker's injuries are caused or contributed to by a railroad's negligence when the railroad's negligence <u>played any part, no matter how small,</u> in bringing about or causing the injuries.  Therefore, if you find that any negligence by Amtrak contributed in any way toward any injury by Mr. Crooker, then you may find that injury to have been caused by Amtrak's negligence.

This is so even if you find that other causes contributed to Mr. Crooker's injuries.  That is, you may find that Amtrak's negligence caused Mr. Crooker's injuries even if you find that other factors caused or contributed to those injuries as well.


<u>See</u> Devitt, Blackmar and Wolff, <u>Federal Jury Practice and Instructions</u>, Section 94.13 (4th Ed. 1987); <u>Camplese v. Consolidated Rail Corporation</u>, 594 F. Supp. 44, 47 (M.D. Pa. 1984)(FELA inquiry is limited to question whether employer negligence played any part, <u>however</u> <u>small</u> in bringing about employee injury), <u>citing</u> <u>Rogers v. Missouri Pacific R. Co.</u>, 352 U.S. 500 (1957).

**7.**

**NEGLIGENCE/CAUSATION**

Taking together what I have told you so far, if you find by a preponderance of the evidence that Amtrak was negligent, and that Amtrak's negligence <u>played</u> <u>any</u> <u>part</u>, <u>no</u> <u>matter</u> <u>how</u> <u>small</u>, in bringing about Mr. Crooker's injuries, then you should return a verdict in favor of Mr. Crooker and against Amtrak.

<u>Camplese v. Consolidated Rail Corporation</u>, 594 F. Supp. 44, 47 (M.D. Pa. 1984)(FELA inquiry is limited to question whether employer negligence played any part, <u>however</u> <u>small</u> in bringing about employee injury), <u>citing</u> <u>Rogers v. Missouri Pacific R. Co.</u>, 352 U.S. 500 (1957). <u>See</u> <u>also</u> <u>Krienke v. Illinois Central R. Co.</u>, 249 F.2d 840, 844 (2d Cir. 1958); <u>Beeber v. Amtrak Corp.</u>, 754 F. Supp. 1364, 1372 (N.D. Ind. 1990); <u>Sydnor v. Bond</u>, 381 N.Y.S.2d 905, 906, 52 A.D. 665 (1976)(same); Devitt, Blackmar & Wolff, <u>Federal Jury Practice and Instructions</u>, Section 94.13 (4th Ed. 1987).

**8.**

**DEFENDANT'S DUTY**

I instructed you earlier that this case is brought under the Federal Employers' Liability Act.  That law imposes on Amtrak continuing, non-delegable duty to use reasonable care to furnish its employees with a safe place to work.  The failure to provide a reasonably safe place for an employee to perform his or her duties is negligence.

Bailey v. Central Vermont Ry. Co., 319 U.S. 350 (1943)(FELA duty is "continuing");
Carter v. Union Railroad Company, 438 F.2d 208, 210-11 (3d Cir. 1971)(FELA duty
is non-delegable); citing Sano v. Pennsylvania Railroad, 282 F.2d 936 (3d Cir. 1960).

**9.**

**PLAINTIFF'S AVERMENTS**

Turning to Mr. Crooker's specific allegations, Mr. Crooker contends that Amtrak negligently exposed him to a locomotive with a doorway that was dangerous because:  (a) The doorway was too low and too narrow to safely accommodate Amtrak engineers, particularly tall and heavy engineers like Mr. Crooker; (b) Amtrak negligently failed to pad the top of the low doorway; and (c) Amtrak negligently failed to place safety markings placed on the top of the low doorway.  Mr. Crooker also contends that Amtrak negligently failed to train him to exit the locomotive without his engineer's bag or to devise work rules that required this, and negligently failed to provide someone to whom Mr. Crooker could have tossed his bag before de-boarding the locomotive.

See Hoyt v. Central Railroad, 243 F.2d 840, 844 (3d Cir. 1957)(trial judge should include in his charge all of the circumstances alleged by plaintiff to have constituted railroad negligence).

**10.**

**DUTY TO PROVIDE SAFE AND SUITABLE LOCOMOTIVES
AND OTHER TOOLS AND EQUIPMENT**

With respect to Mr. Crooker's first claim, that Amtrak provided him with a locomotive whose doorway was not safe to exit because it was too low and narrow, lacked overhead padding and lacked warnings, I instruct you that under the law, Amtrak is required to provide its employees with safe and suitable locomotives and other tools and equipment.

45 U.S.C.A. § 51.   <u>Chicago & N. W. Ry. Co. v. Rieger</u>, 326 F.2d 329 (8th Cir. 1964), *cert. denied*, 377 U.S. 917 (1964); <u>Rodriguez v. Delray Connecting Railroad</u>, 473 F.2d 819, 821 (6th Cir. 1973)(safe and suitable tools); <u>Kalanick v. Burlington Northern R. Co.</u>, 788 P.2d 901, 242 Mont. 45 (1990)(safe and suitable equipment); <u>St. Louis Southwestern Ry. Co. v. Greene</u>, 553 S.W.2d 880, 884 (Tex. 1977)(safe and suitable equipment).

**11.**

**DUTY TO INSPECT (ACTUAL KNOWLEDGE UNNECESSARY)**

Specifically with respect to Mr. Crooker's claim that the locomotive lacked overhead padding or warnings, I instruct you that under the law, a railroad does not have to actually know about a specific dangerous condition in order to be liable to workers injured from that condition. Rather, a railroad has an affirmative duty to inspect equipment to discover unsafe conditions and to protect its employees from those conditions.

Nivens v. St. Louis Southwestern Ry. Co., 425 F.2d 114, 118, 120 (5th Cir. 1979); Cazad v. Chesapeake & Ohio Ry. co., 622 F.2d 72, 75 (4th Cir. 1980); Shenker v. Baltimore & Ohio railroad, 374 U.S. 1, 8 (1963); Carter v. Union Pacific Railroad Co. 438 F.2d 208 (3d Cir. 1971).

**12.**

**DUTY TO PROVIDE ADEQUATE MANPOWER**

With respect to Mr. Crooker's claim that Amtrak failed to provide an employee to whom he could have handed his bag before exiting the locomotive, I instruct you that under the law, a railroad's duty to provide its employees with a safe place to work includes the obligation to provide adequate manpower.

Blair v. Baltimore & Ohio r. Co., 323 U.S. 600 (1945)(sufficient manpower);  Kalanick v. Burlington Northern R. Co., 788 P.2d 901, 242 Mont. 45 (1990)(safe and suitable equipment and manpower).

**13.**

**DUTY TO ADEQUATELY TRAIN EMPLOYEES**


With respect to Mr. Crooker's claim that Amtrak failed to train him and other employees not to exit locomotives while carrying their bags, I instruct you that under the law, a railroad is obligated to train its employees how to perform their job safely.


Kimbler v. Pittsburgh & Lake Erie Rail Co., 331 F.2d 383, 386 (3d Cir. 1964), citing, Oliver v. Chesapeake & Ohio Ry. Co., 151 N.E.2d 371, 373 (Ohio. Ct. App. 1951); Chesapeake & Ohio Ry. Co. v. Richardson, 116 F.2d 860, 863 (6th Cir. 1941), cert. Denied, 313 U.S. 574.  See also Williams v. Amtrak, 1997 U.S. Dist. LEXIS 18726 (N.D. Ill. 1997); Zareki v. Amtrak, 914 F. Supp. 1566 (N.D. Ill. 1996); Aparicio v. Norfolk & Western, 874 F. Supp. 154 (N.D. Ohio 1994), rev'd on other grounds, 84 F.3d 803 (1996); Tremblay v. Rudrick & Sons, Inc., 13 A.2d 153, 154-55 (N.H. 1940).

**14.**

**DUTY TO DEVISE SAFE WORK METHODS AND PROCEDURES**

With respect to Mr. Crooker's claims that Amtrak failed to make and enforce a rule requiring employees not to exit locomotives while carrying their bags, I instruct you that under the law, a railroad is required to devise and enforce safe work methods and procedures.

Kimbler v. Pittsburgh & Lake Erie Rail Co., 331 F.2d 383, 386 (3d Cir. 1964), citing, Oliver v. Chesapeake & Ohio Ry. Co., 151 N.E.2d 371, 373 (Ohio. Ct. App. 1951); Chesapeake & Ohio Ry. Co. v. Richardson, 116 F.2d 860, 863 (6th Cir. 1941), cert. Denied, 313 U.S. 574.  See also Williams v. Amtrak, 1997 U.S. Dist. LEXIS 18726 (N.D. Ill. 1997); Zareki v. Amtrak, 914 F. Supp. 1566 (N.D. Ill. 1996); Aparicio v. Norfolk & Western, 874 F. Supp. 154 (N.D. Ohio 1994), rev'd on other grounds, 84 F.3d 803 (1996); Tremblay v. Rudrick & Sons, Inc., 13 A.2d 153, 154-55 (N.H. 1940).

**15.**

**NEGLIGENCE & CAUSATION - SUMMARY**

Taking together what I have instructed you so far, Amtrak was obligated to provide Mr. Crooker with a safe place to work, and that duty included the duty to provide safe and suitable locomotives, tools and other equipment, adequate training and adequate manpower, and the duty to devise safe work methods and procedures and to inspect equipment for dangerous conditions.  Accordingly, if you find that Amtrak negligently failed to fulfill any of these duties and that such fact played <u>any part, no</u> <u>matter how small</u>, in causing Mr. Crooker injury, then you should return a verdict for Mr. Crooker.

45 U.S.C. Section 51.  <u>See</u> <u>Camplese v. Amtrak Railway</u>, 594 F. Supp. 44, 47 (M.D. Pa. 1984), <u>citing</u> <u>Rogers v. Missouri Pacific R. Co.</u>, 352 U.S. 500 (1957).

## 16.

## CONTRIBUTORY NEGLIGENCE

[Plaintiff believes that a charge on contributory negligence should not be given because there is no evidence from which a jury reasonably could find contributory negligence. However, should the Court determine to the contrary, the following three charges are submitted.]

Dixon v. Penn Central Co., 481 F.2d 833, 837 (6th Cir. 1973)(FELA case; where there was no evidence of contributory negligence on the part of the plaintiff, it was error to submit the issue of contributory negligence to the jury); Urti v. Transport Commercial Corp., 479 F.2d 766 (5th Cir. 1973)(Jones Act case; where contributory negligence instruction is given to jury without evidence to support it, plaintiff may claim error).

## 17.

## CONTRIBUTORY NEGLIGENCE - DEFINED

Amtrak argues that Mr. Crooker himself was guilty of contributory negligence and that such negligence was a cause of his injuries. Contributory Negligence is fault on the part of the plaintiff that contributes in bringing about the plaintiff's injuries. In this case, the burden of proving contributory negligence is on Amtrak. To establish its claim, the burden is on Amtrak to prove that Mr. Crooker was independently guilty of negligence and second that such negligence caused or contributed to his injuries.

**18.**

**CONTRIBUTORY NEGLIGENCE**
**(ASSUMPTION OF RISK DISTINGUISHED)**

In determining whether Mr. Crooker was contributorily negligent, you are instructed that you may not find Mr. Crooker contributorily negligent merely because he was required to work at a dangerous job or in a dangerous place or under unsafe conditions. None of these facts constitutes a defense in an action under the Federal Employers' Liability Act.

See 45 U.S.C. Section 54; Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54, 58 (1943)(assumption of risk doctrine "obliterated" by 1939 amendment); Taylor v. Burlington Northern R. Co., 787 F.2d 1309, 1316-17 (9th Cir. 1986)(employee's act of simply reporting to work did not constitute contributory negligence, but rather assumption of risk); Adams v. Seaboard Coast Line R. Co., 295 So.2d 1,5 (Fla. 1974)(mere employee knowledge of danger created by railroad negligence does not preclude recovery); Erickson v. Southern Pacific Co., 39 Cal.2d 374, 246 P.2d 642, 646 (Cal. 1952), cert. denied, 344 U.S. 897 (1952)(Plaintiff's knowledge of unsafe nature of premises does not relieve defendant of liability); Schirra v. Delaware, L. & W. R. Co., 103 F. Supp. 812, 819 (M.D. Pa. 1952)(Defendant cannot argue that Plaintiff assumed risk by returning to job; an employee need not quit his job rather than do something he knows or ought to know is dangerous). See Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, Section 94.16 (4th Ed. 1987).

**19.**

**CONTRIBUTORY NEGLIGENCE:  NOT A BAR TO RECOVERY
UNDER FELA**

Should you find that Mr. Crooker was contributorily negligent and that his negligence caused or contributed to his injuries, you are instructed that contributory negligence is not a complete defense, but is a partial defense only.  In other words, contributory negligence does not bar a plaintiff's recovery but merely reduces it by an amount equal to the percentage of contributory negligence chargeable to the Plaintiff.

See 45 U.S.C. Section 53; Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions, Sections 94.18, 94.21 (4th Ed. 1987).

**20.**

**LOCOMOTIVE INSPECTION ACT – ELEMENTS OF CLAIM**

So far, we have been speaking about the Federal Employers' Liability Act.  I instructed you at the beginning that Mr. Crooker brings his claim based upon <u>both</u> the Federal Employers Liability Act and another law called the Locomotive Inspection Act.  As to the Locomotive Inspection Act, Mr. Crooker claims that the low height and narrow width of the locomotive door and the lack of overhead padding and warning, resulted in the locomotive's posing an unnecessary risk of personal injury.

To prove his claim under the Locomotive Inspection Act, Mr. Crooker must prove:  First, that Amtrak violated the Act; and Second, that Amtrak's violation of the Locomotive Inspection Act caused injury to Mr. Crooker.

<u>See</u> O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instruction</u>, Sections 155.80, 155.101 (5th Ed. 2001).

**21.**

**LOCOMOTIVE INSPECTION ACT - DUTY**

The Locomotive Inspection Act provides as follows:

> A railroad carrier may use or allow to be used a locomotive . . .
> on its railroad line <u>only</u> when the locomotive . . . and its parts and
> appurtenances --
>
> (1)     are in proper condition and safe to operate without
> unnecessary danger of personal injury.

Under this law, Amtrak is allowed to operate only those locomotives that are in proper condition, and that do not pose unnecessary danger of personal injury.  A railroad that operates locomotives that are not in proper condition, or that pose an unnecessary danger of personal injury, is in violation of the Locomotive Inspection Act.

49 U.S.C. §20701.  <u>Lilly v. Grand Trunk Western Railroad</u>, 317 U.S. 481, 485 (1942), <u>quoting</u>, <u>inter alia</u>, <u>Southern Ry. Co. v. Lunsford</u>, 297 U.S. 398, 401 (1936).

**22.**

## LOCOMOTIVE INSPECTION ACT
## - - NO NEED TO PROVE NEGLIGENCE

A railroad's liability under the Locomotive Inspection Act does not require a showing of negligence. That is, to prove that Amtrak violated the Locomotive Inspection Act, Mr. Crooker does not have to show that Amtrak was negligent or careless in any way; he only has to show that the locomotive, or any of its parts, was not in proper condition or otherwise posed an unnecessary danger of personal injury. Therefore, Amtrak cannot avoid liability by showing that it used reasonable care to inspect and maintain the locomotive or that it had no notice of any defect in the locomotive.

See Lilly v. Grand Trunk Western Railroad, 317 U.S. 481, 485 (1942)(negligence is not the basis of liability under the BIA); McCarthy v. Pennsylvania Railroad Co., 156 F.2d 877, 880 (7th Cir.)(no notice to railroad of defect is necessary to render railroad liable under BIA), cert. denied, 329 U.S. 812 (1946); Trout v. Pennsylvania Railroad Co., 300 F.2d 826, 829 (3d Cir. 1962)(district court must make clear to jury that neither evidence of negligence nor due care should be considered)(safety appliance act).

**23.**

**CONTRIBUTORY NEGLIGENCE
& ASSUMPTION OF RISK ARE NOT DEFENSES UNDER
THE LOCOMOTIVE INSPECTION ACT**

Just as Mr. Crooker does not have to establish Amtrak's negligence under the Locomotive Inspection Act for Amtrak to be liable, Amtrak cannot avoid liability by arguing that Mr. Crooker himself was negligent or that his accident arose from his own negligence or lack of care. Nor can Amtrak avoid liability under the Locomotive Inspection Act by establishing that Mr. Crooker knew the doorway was low and narrow or that he knew there were not safety pads or warnings. None of these constitutes a defense under the Locomotive Inspection Act.

Therefore, in determining whether to hold Amtrak liable under the Locomotive Inspection Act, you are not to consider whether Mr. Crooker himself was careful or not, or whether he could have or should have seen that the doorway was low or narrow or lacked safety pads or warnings.

Lilly v. Grand Trunk Western Railroad, 317 U.S. 481 (1942)(defenses of contributory negligence and assumption of risk are not available in Boiler Inspection Act case); McCarthy v. Pennsylvania Railroad Co., 156 F.2d 877, 881 (7th Cir.), cert. denied, 329 U.S. 812 (1946)(even if plaintiff's use of locomotive after he knew of the defect was the sole proximate cause of accident, this is no defense in Boiler Inspection Act case because plaintiff's acts are either acts of contributory negligence or assumption of risk). See generally 45 U.S.C. §§ 53, 54.

## 24.

## CAUSATION - LOCOMOTIVE INSPECTION ACT

When I was instructing you on the Federal Employer's Liability Act, I told you that under that law a railroad's negligence is found to be a "cause" of an employee's injuries wherever the negligence <u>played any part, no matter how small</u>, in bringing about or causing the injuries. This same standard applies under the Locomotive Inspection Act. That is, a violation of the Locomotive Inspection Act is a "cause" of an employee's injuries wherever the violation <u>played any part, no matter how small</u>, in bringing about or causing the injuries. And this is so even if you find that other causes contributed to Mr. Crooker's injuries. That is, you may find that Amtrak's negligence caused Mr. Crooker's injuries even if you find that other factors caused or contributed to those injuries as well.

<u>See</u> O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instruction</u>, §155.120 (4th Ed. 2001); <u>Oglesby v. Southern Pacific Transportation Company</u>, 6 F.3d 603, 608 (9th Cir. 1993).

**25.**

**DAMAGES**


If you find that Amtrak is liable to Mr. Crooker for his injuries, you must decide Mr. Crooker's DAMAGES.  You should award Mr. Crooker such damages as will fairly and justly compensate him for the injuries he has sustained as a result of Amtrak's negligence and is reasonably certain to sustain in the future.


See Devitt, Blackmar & Wolff, Federal Jury Practice and Instruction, Section 85.01 (4th Ed. 1987).

## 26.

## BODILY INJURIES, TREATMENT, INJECTIONS, PHYSICAL
## THERAPY

The first item of damages you may award to Mr. Crooker are money damages to compensate him for his bodily injuries, past, present and future.

With respect to Mr. Crooker's bodily injuries, you have heard testimony from Mr. Crooker's treating physician, doctor Updegrove, that as a result of Mr. Crooker's accident on January 29, 2003, he sustained injuries to his cervical spine that caused pain and other symptoms both in his neck and into his arms and hands.

You heard that to treat his injuries, Mr. Crooker has been required to be under the care of a number of physicians, including doctors Updegrove, Palumbo and O'Leary.

You have heard that to treat his injuries, Mr. Crooker has undergone three epidural injections and forty (40) sessions of physical therapy.

I instruct you that each of the above factors are injuries for which you may properly award Mr. Crooker compensation.

See Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, Section 85.02 (4th Ed. 1987).

**27.**

**PLAINTIFF'S AVERMENTS -- PAIN & SUFFERING**

You have heard testimony regarding the physical pain and discomfort Mr. Crooker has suffered through the present, and likely to suffer in the future. You have also heard testimony from Mr. and Mrs. Crooker as to the nature and degree of mental and emotional pain, stress and frustration Mr. Crooker has endured and continues to endure.

I instruct you that each of the above factors is an injury for which you may properly compensate Mr. Crooker.

See Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, Section 85.02 (4th Ed. 1987).

**28.**

**DIMINISHED QUALITY OF LIFE**

You also have heard evidence that Mr. Crooker has suffered a diminished quality of life, including an inability to fully interact with his adopted daughter and to engage in normal social activities and household chores, as well as his diminished relationship with his wife.

I instruct you that each of the above factors is an injury for which you may properly compensate Mr. Crooker.

See Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, Section 85.02 (4th Ed. 1987).

**29.**

**FAIR AND JUST AWARD**

I have no test by which to tell you how much you should award for Mr. Crooker's bodily injuries, pain and suffering, discomfort, distress, embarrassment and loss of life's pleasures.  I can only instruct you that it is your duty to make an award to Mr. Crooker in full appreciation of the nature and extent of such injuries, past, present and future.  The amount you award should be fair and just.

## 30.

## PAST LOST EARNINGS

The final item of damages you may find Mr. Crooker entitled to recover is economic damages. Economic damages in this case refers to the wages Mr. Crooker has lost from the date of the accident through the present as well as the diminishment of his ability to earn wages and benefits in the future. The first part of this is what we call *Past Lost Wages*, and there is evidence from which you may find that Mr. Crooker missed seven and a half months from work, and that when he did go back, he suffered diminished wages even while he was working.

See Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, Section 85.07 (4th Ed. 1987).

**31.**

**DIMINISHED FUTURE EARNING CAPACITY**

With respect to the future, Mr. Crooker is entitled to compensation for any decrease in his earning capacity - -  that is, his ability to earn wages and benefits in the future - - as a result of the accident.  This is called *Lost Future Earning Capacity*.  In determining the amount to award to Mr. Crooker, if any, for lost future earning capacity, you should consider what his physical ability and earning power were <u>before</u> he was injured and what they are <u>now</u>.  You should also consider the nature and extent of Mr. Crooker's injury and whether it is reasonably certain to be permanent.

In regard to Mr. Crooker's physical condition before the accident, you have heard that before the accident, Mr. Crooker did not suffer from any debilitating injuries.  With respect to Mr. Crooker's physical condition since the accident, Mr. Crooker's treating physicians, Dr. Updegrove has testified that Mr. Crooker's cervical and injuries will in the future prevent him from taking all the overtime he would otherwise take.

<u>See</u> Devitt, Blackmar & Wolff, <u>Federal Jury Practice and Instructions</u>, Section 85.07 (4th Ed. 1987).

**33.**

**AGGRAVATION OF PRE-EXISTING CONDITION**

You have heard that Mr. Crooker may have had degenerative conditions before the injury of January 29, 2003.

As to this point, I instruct you that Amtrak is liable to Mr. Crooker if Amtrak's negligence aggravated pre-existing conditions in Mr. Crooker. If you find that Mr. Crooker had pre-existing conditions which were aggravated by Amtrak's negligence, then you should determine if you can what portion of Mr. Crooker's injuries resulted from the aggravation and make allowance in your verdict for the aggravation. However, if you cannot make that determination, or if you find that Mr. Crooker's injuries would not have existed apart from the January 29, 2003 accident, you should make allowance in your verdict all of his injuries.

See Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, Section 85.03 (4th Ed. 1987); Tabor v. Miller, 389 F.2d 645 (3d Cir. 1968), cert. denied, 391 U.S. 915; Lancaster v. Norfolk & Western Ry. Co., 773 F.2d 807, 820 (e7th Cir. 1985)("eggshell" plaintiff rule), citing, inter alia, Stoleson v. United States, 708 F.2d 1217, 1220-21 (7th Cir. 1983); Lebesco v. Amtrak Railway, 380 A.2d 848 (Pa. Super. 1977)(eggshell plaintiff rule). See also Restatement (Second) of Torts, Section 461(Defendant liable even where defendant does not know of the special condition of the plaintiff).

**34.**

**EGGSHELL PLAINTIFF RULE**

You have heard testimony that Mr. Crooker's conditions before the accident may have made him more susceptible to injuries than a typical or average person.

I instruct you that even if this is so, Amtrak is nonetheless liable to Mr. Crooker if its negligence caused Mr. Crooker injuries that a typical or average person would not have sustained. Under the law, a defendant takes his victim as he finds him, and it is no defense for Amtrak to argue that Mr. Crooker was more susceptible to injury or complications that a typical or average person.

See Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, Section 85.03 (4th Ed. 1987); Lancaster v. Norfolk & Western Ry. Co., 773 F.2d 807, 822 (7th Cir. 1985)("eggshell" plaintiff rule), citing, inter alia, Stoleson v. United States, 708 f.2d 1217, 1220-21 (7th Cir. 1983); Tabor v. Miller, 389 F.2d 645 (3d Cir. 1968), cert. Denied, 391 U.S. 915. See also Restatement (Second) of Torts, Section 461(Defendant liable even where defendant does not know of the special condition of the plaintiff).

34

## CERTIFICATE OF SERVICE

I, WILLIAM L. MYERS, JR., ESQUIRE, hereby certify that I served the foregoing Plaintiff's Proposed Points for Charge upon the below-listed counsel for defendant by first-class mail, postage prepaid and through electronic filing:

Thomas V. DiGangi, Esquire
Law Offices of John Bonistalli
One Financial Center – 28th Floor
Boston, MA 02111

*William L. Myers, Jr.*
William L. Myers, Jr., Esquire

Dated: December 5, 2006

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PETER CROOKER, | : | |
| | : | CIVIL ACTION NO.:05-10301RCL |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NATIONAL RAILROAD PASSENGER | : | |
| CORPORATION, a/k/a AMTRAK, | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFF'S PROPOSED VOIRE DIRE

Plaintiff Peter Crooker, by his undersigned counsel, requests that the following questions be read to the prospective jury panel during voire dire.

1.      The Plaintiff in this case is Peter Crooker.  Does anyone know Mr. Crooker, or his wife, Ann Marie Crooker?  Mr. and Mrs. Crooker live on 131 Ten Rod Road in North Kingston, RI 02852

2.      Does anyone know Mr. Crooker's attorney, Mr. Myers, or his law firm, Myers Lafferty Law Offices?

3.      In this case, the defendant is the National Railroad Passenger Corporation, or "Amtrak."  Does anyone know Amtrak's attorneys, Thomas DiGangi and John Bonistalli?

4.     Does anyone know the following potential witnesses who may be presented

to testify:

1.      Dennis Drumheller
        118 Yew Street
        Douglas, Massachusetts 01516
        (Road Foreman of Engines)

2.     Dean Davidson
       39 Pinecrest Drive
       Pawtucket, RI

3.     John Newman
       30 Spruce Street
       Foxboro, MA

5.     Does anyone know any of the following people, who *may* be called upon to

testify as *expert* witnesses:

1.     Randall L. Updegrove, M.D.
       University Orthopedics, Inc.
       1351 South County Trail, Suite 115
       East Greenwich, RI 02818
       (401) 884-1177

2.     Mark A. Palumbo, M.D.
       University Orthopedics, Inc.
       Medical Office Center
       2 Dudley Street – Suite 200
       Providence, RI 02905

3.     John O'Leary, D.O. – Medical Expert
       24 Salt Pond Road
       H-1
       Wakefield, RI 02879

6.      Have you, or any of your close friends or relatives, ever worked for Amtrak? (If so, provide details).

7.      Have you, or any of your close friends or relatives, ever worked for any other railroad?  (If so, provide details).

8.      Have your, or any of your close friends or relatives, ever suffered serious cervical or neck injuries?  (If so, provide details.)

9.      Have you, or any of your close friends or relatives, ever worked in the medical field?  (If so, provide details.)

10.     Have you, or any of your close friends or relatives, ever worked a job where you evaluate injury claims?  (If so, provide details.)

11.     Have you, or any of your close friends or relatives, ever been a plaintiff or a defendant in a civil lawsuit or a criminal case?  (If so, provide details.)

12.     Have you ever served on a jury before?  (If so, provide details.)

13.     Has any member of the Panel ever been a witness in a trial before?  (If so, provide details).

14.     Without having heard the evidence, is there anyone here who has a personal limit on the amount of compensation you could award in this case?

15.     Is there anyone here who believes that jurors should not have the power or right to decide whether, or how much, to award as compensation to an injured man or woman in a lawsuit?

16.     Is there anyone here who believes there should be a "cap" or legal limit on the amount of compensation that any jury could award to an injured person?

17.     Is there anyone here who believes that injured people should not bring law-suits?

18.     Is there any member of the Panel who has strong negative feelings toward the legal system?

19.     If you decide that Mr. Crooker was injured by Amtrak is there any reason that you would not or could not compensate him for his injuries?

20.     Is there anyone here who has any political, philosophical or religious views or beliefs that might affect your ability to be a juror in a civil lawsuit?

21.     Is there anyone here who, for any reason whatsoever, could not be a fair and impartial juror, and reach a verdict that is just and fair and based upon the evidence?

22.     Is there any member of the Panel who has difficulty seeing or hearing?

23.     Is there any member of the Panel who has difficulty understanding English?

24.     Is there any member of the Panel who has a medical problem that would interfere with your ability to sit as a juror?

25.     This case may last until the end of this week.  Is there any Panel member who would be unable to participate in this case as a juror for that length of time or who feels, if the case lasts that long, you might have difficulty giving the evidence the attention it deserves?

**MYERS LAFFERTY LAW OFFICES, P.C.**


**BY:**     *William L. Myers, Jr.*
            William L. Myers, Jr., Esquire

## CERTIFICATE OF SERVICE

I, WILLIAM L. MYERS, JR., ESQUIRE, hereby certify that I have today served a true and correct copy of the foregoing Plaintiff's Proposed Voire Dire on the below-listed counsel for defendant Amtrak by first-class mail, postage prepaid and by electronic filing:

Thomas V. DiGangi, Esquire
Law Offices of John Bonistalli
One Financial Center – 28th Floor
Boston, MA 02111

_William L. Myers, Jr._
William L. Myers, Jr., Esquire

Dated:  December 4, 2006

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

PETER CROOKER,              :
                                 :    CIVIL ACTION NO.:05-10301RCL
               Plaintiff,      :
                                 :
     v.                       :
                                 :
NATIONAL RAILROAD PASSENGER :
CORPORATION, a/k/a AMTRAK,   :
                                 :
             Defendant.    :

## PLAINTIFF'S PROPOSED SPECIAL JURY INTERROGATORIES

## FEDERAL EMPLOYERS' LIABILITY ACT

1.    Was the defendant Amtrak negligent?

        Yes \_\_\_\_\_             No \_\_\_\_\_

**(If your answer to Question 1 is "Yes," answer Question 2.**
**If your answer to Question 1 is "No," answer Question 6).**

2.    Did Amtrak's negligence play any part, no matter how small, in causing

Mr. Crooker injuries?

        Yes \_\_\_\_\_             No \_\_\_\_\_

**(If your answer to Question 2 is "Yes," answer Question 3.**
**If your answer to Question 2 is "No," answer Question 6).**

3.      Was Mr. Crooker negligent?

Yes _____                        No _____

**(If your answer to Question 3 is "Yes," answer Question 4.
If your answer to Question 3 is "No," answer Question 6).**


4.      Did Mr. Crooker's negligence play any part, no matter how small, in causing Mr. Crooker injuries?

Yes _____                        No _____

**(If your answer to Question 4 is "Yes," answer Question 5.
If your answer to Question 4 is "No," Answer Question 6).**


5.      What is the percentage of fault do you assign to each party?  (Your answer must add up to 100%):

Amtrak            _____ %

Mr. Crooker    _____%

Total     **100** %

**(Whatever your answer to Question 5, go to Question 6)**

## <u>LOCOMOTIVE INSPECTION ACT</u>

6.      Did defendant Amtrak violate the Locomotive Inspection Act?

Yes _____                    No _____

**(If your answer to Question 6 is "Yes," answer Question 7.
If your answer to Question 6 is "No," answer Question 8
if you answered "Yes" to both Questions 1 and 2).**

7.      Did Amtrak's violation of the Locomotive Inspection Act play any part, no matter how small, in causing Mr. Crooker injuries?

Yes _____                    No _____

**(If you answered "Yes" to Question 7, answer Question 8.
If you answered "No" to Question 7, answer Question 8
if you answered "Yes" to both Questions 1 and 2).**

8.      State in dollars the amount of damages you award to Mr. Crooker to compensate him for all of his injuries, past, present and future.  (Do not reduce your award by any percentage you assigned in answer to Question 5.  The Court will make any necessary reductions):

$_____

BY THE FOREPERSON:

_____

## CERTIFICATE OF SERVICE

I, WILLIAM L. MYERS, JR., ESQUIRE, hereby certify that I served the foregoing Plaintiff's Proposed Special Jury Interrogatories upon the below-listed counsel for defendant by first-class mail, postage prepaid.

Thomas V. DiGangi, Esquire
Law Offices of John Bonistalli
One Financial Center – 28th Floor
Boston, MA 02111

*William L. Myers, Jr.*
William L. Myers, Jr., Esquire

Dated:  December 4, 2006